USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/31/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMARI MOODY,

Plaintiff,

-against-

NEW YORK INSTITUTE OF TECHNOLOGY and TIFFANI HINDS,

Defendants.

25-CV-08730 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

The Court assumes familiarity with the facts and procedural history of this matter. *Pro se* Plaintiff is Amari Moody. Defendants are the New York Institute of Technology ("NYIT") and one of its provosts, Tiffani Hinds. In brief, Mr. Moody is a former student at NYIT and alleges a variety of claims against Defendants for disability-based discrimination and retaliation and violation of other federal laws. On January 8, 2026, the Court referred the case to Magistrate Judge Netburn for general pre-trial supervision and for a report and recommendation ("R&R") on any motions to dismiss. Dkt. No. 33. Defendants moved to dismiss on January 20, 2026. Dkt. No. 39.

Before the Court is Judge Netburn's June 29, 2026 R&R (Dkt. No. 114) recommending the Court grant Defendants' motion to dismiss with leave to amend. Mr. Moody objected to the R&R on July 4, 2026. Dkt. No. 119 ("Obj."). For the following reasons, the R&R is ADOPTED and the motion to dismiss is GRANTED with leave to amend.

**BACKGROUND**

The Court incorporates by reference the factual and procedural background fully set forth on pages two through fourteen of the R&R and directs the reader thereto.

## DISCUSSION

This Opinion proceeds in six parts. First, the Court clarifies the applicable legal standards. Second, the Court addresses and rejects Mr. Moody's objections to the R&R. Third, the Court addresses Mr. Moody's objections to the Court's June 30, 2026 order and July 14, 2026 order. Fourth, the Court adopts the R&R. Fifth, the Court denies Mr. Moody's other miscellaneous motions. Sixth and last, the Court issues Mr. Moody a final warning to stop abusing the judicial process.

## I. LEGAL STANDARDS

### A. Reviewing a Report and Recommendation

When reviewing a report and recommendation by a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When objections are filed, "[t]he district judge must determine *de novo*" those portions of the report and recommendation to which objections have been made. Fed. R. Civ. P. 72(b)(3). A district court will review portions of the report and recommendation to which no timely objections have been made for clear error. *See, e.g.*, *Gershowitz v. Griv*, No. 24-CV-01915 (PAE) (OTW), 2025 WL 2170773, at *2 (S.D.N.Y. July 31, 2025)..[1]

### B. Considering a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021). In addressing a motion to dismiss, a court may consider documents attached to the complaint or incorporated by reference therein. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). Plaintiff is proceeding *pro se*. "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 549 F.3d 241, 248 (2d Cir. 2006)).

## II. THE OBJECTIONS TO THE R&R ARE OVERRULED

Mr. Moody has arranged his objections to the R&R into what he describes as four "tracks." The Court considers each track in turn.

### A. Track One

In Track One, Mr. Moody objects to procedures in this lawsuit. Namely, he argues Judge Netburn lacked authority to deny his motions for, *inter alia*, subpoenas, sanctions, expedited discovery, litigation holds, etc. Obj. at 8–10. This argument fails. This Court properly referred this case to Judge Netburn for general pre-trial supervision. Dkt. No. 33; Fed. R. Civ. P. 72. Judge Netburn has authority to deny non-dispositive motions, and these were non-dispositive

motions. *See* 28 U.S.C. § 636(b)(1)(A); *Humphreys v. New York City Health & Hospitals Corp.*, No. 16-CV-09707 (VSB), 2023 WL 155446, at *3 (S.D.N.Y. Jan. 11, 2023) (treating an order denying a motion for sanctions as non-dispositive). Mr. Moody also argues the Court never properly referred Defendants' motion to dismiss to Judge Netburn because the Court's referral order preceded the motion to dismiss. Obj. at 6–7. This argument has no basis in law and is rejected.[2]

Some of Mr. Moody's other Track One objections can be addressed in short order: (1) Judge Netburn is free to describe Mr. Moody's filings are frivolous (Obj. at 10); (2) nothing prevents her from recommending denial of all of Mr. Moody's motions (*id.*); (3) any officer of the court can warn someone that repeated disregard of court orders will result in a prospective filing restriction (*id.* at 13); (4) Judge Netburn could take judicial notice of the many, many orders chastising Mr. Moody's conduct in his other lawsuits (*id.*, *see, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 369 (2d Cir. 2009)); and (5) Mr. Moody's sanctions motions were non-dispositive pretrial matters squarely within Judge Netburn's authority (Obj. at 8–11).

Last, Mr. Moody argues it was improper for Judge Netburn to issue her R&R when Mr. Moody had filed objections to "two additional structural sequencing defects." Obj. at 15. It was not improper, and in any event neither objection was meritorious. The first objection challenged Judge Netburn's April 1, 2026 order (Dkt. No. 104) denying Mr. Moody's March 27, 2026 motion for sanctions (Dkt. No. 100). Judge Netburn's order was well reasoned and legally sound. The second objection challenged a so-called "void service chain" (Dkt. No. 98) arising

[2] Looking at the Court's amended referral order (Dkt. No. 33), Mr. Moody also highlights that the box for "Consent under 28 U.S.C. § 636(c) for all purposes (including trial)" is unchecked and argues that is "dispositive" on the question of Judge Netburn's authority. Obj. at 7. It is not. Judge Netburn has not issued final rulings on any dispositive motions, and there is no such thing as a "quasi-dispositive" motion.

out of Chief Judge Swain granting Mr. Moody's application to proceed *in forma pauperis* ("IFP"), this Court issuing an order of service (Dkt. No. 9), and an October 28, 2025 docket entry by the Clerk's Office mistakenly referencing Judge Gardephe. Obj. at 15–16. There is no actionable defect in this sequence, which reflects only the regular practices of the Southern District of New York (in this District, the Chief Judge acts on IFP applications made at the time of filing, before a *pro se* matter is assigned to a particular judge) and a minor typographical error by a docketing clerk with no substantive import.

**B. Track Two**

In Track Two, Mr. Moody challenges several purported legal errors in the R&R.

**First**, he argues Judge Netburn did not accept the allegations in his complaint as true, in contravention of the *Twombly-Iqbal* standard. Obj. at 20. As an example, he highlights that his complaint alleged: "Within weeks, under Defendant Hinds' direction, the Registrar retroactively changed those Incompletes to Withdrawn and subsequently Never Attended, contradicting faculty records." *Id.* In spite of that allegation, Mr. Moody argues, Judge Netburn on page 22 of the R&R wrote: "NYIT went through each of Plaintiff's Spring 2025 course records and correspondences and found 'no record of [him] attending any course, engaging in any academic-related activity, or doing more than logging into [his] online course." *Id.* (quoting R&R at 22). Accordingly, he concludes, Judge Netburn credited NYIT's allegations in its memorandum over the allegations in his complaint. Obj. at 20–21. This is incorrect. First, the cited section of the R&R is not clearly inconsistent with the allegations in the Complaint. But even if it is, on a motion to dismiss, a court considers the allegations in a complaint and *the documents appended thereto* and accepts all well-pleaded allegations as true. *United States ex rel. Foreman*, 19 F.4th at 106. The Complaint alleges the grades were changed, which Defendants do not dispute. Mr. Moody himself attached to the complaint numerous email correspondences wherein NYIT

staff explained to him why those grades were changed: he never attended his courses. Mr. Moody nowhere alleges in his Complaint that he did attend his courses or complete any academic work. So, Judge Netburn never discredited his allegations. She simply included the factual record created by the documents Mr. Moody himself provided and attached to his Complaint.

**Second**, Mr. Moody argues Judge Netburn failed to engage with his opposition brief and the "post-briefing" record because she did not cite them in the R&R. Obj. at 21–22. Lack of citations does not indicate Judge Netburn failed to grapple with his arguments..[3]

**Third**, Mr. Moody argues Judge Netburn cited the wrong standard in determining what a "qualifying disability" is because Judge Netburn cited *Capobianco v. City of New York*, which preceded Congress's 2008 amendments to the ADA. Obj. at 22. This argument, too, fails. Judge Netburn properly identified the elements of an ADA failure to accommodate claim and relied on contemporary case law in determining that Mr. Moody had failed to explain how his purported disabilities substantially limited one or more of his life activities. *See* R&R at 19–20. Mr. Moody also argues Judge Netburn's conclusion contradicted the record because NYIT had given him disability-related accommodations. Obj. at 23. Whether NYIT's designated ADA officer recognized Mr. Moody had a disability or provided him with certain requested accommodations does not bear on whether Mr. Moody has properly alleged a disability in his Complaint as a matter of law.

---

[3] Moreover, Mr. Moody's January 20, 2026 opposition document (Dkt. No. 53) did not raise any viable legal arguments, only a variety of irrelevant conclusions and comments. *See* Dkt. No. 53 (stating that emails cited in Defendants' opposition brief are "not policy" or that the motion to dismiss is "procedurally barred" because it proceeds as though "institutional authority is settled").

**Fourth**, Mr. Moody challenges Judge Netburn's determination that he requested an unreasonable accommodation by asking NYIT to change his grades to "incomplete" or "medical withdrawal." Obj. at 24. Judge Netburn highlighted that NYIT staff repeatedly informed Mr. Moody that his request was "not legally permissible" under "federal financial aid laws" and contrary to NYIT's grading policy, but that NYIT nevertheless "endeavored to work with Plaintiff to resolve his academic standing dispute and even offered to allow him to retroactively apply for a medical withdrawal for the Spring 2025 term so that he could apply for a tuition reimbursement." R&R at 22–23. Mr. Moody disputes whether his requested accommodation would have violated "federal financial aid laws." Obj. at 24. He argues NYIT never engaged in the correct process before changing his grades to "Never Attended," as evidenced by the fact that NYIT later learned that Mr. Moody had taken one test in his math class. *Id*. He also complains that Defendant Hinds, with whom he corresponded, had "no ADA or Section 504 authority." *Id.* These objections are meritless. That NYIT later learned that Mr. Moody had taken one test in one math class does not mean their process for adjusting Mr. Moody's grades to "Never Attended" was flawed (or that this academic designation is wrong under NYIT's attendance and grading policies). Nor does that conclusion follow from the fact that Mr. Moody corresponded with Defendant Hinds.

**Fifth**, Mr. Moody argues Judge Netburn found there was no evidence of retaliatory animus despite, in his view, certain exhibits attached to his Complaint providing direct evidence of such animus. Obj. at 26. Namely, he references a May 12, 2025 email that Defendant Hinds sent to NYIT's president stating that: "This student complained to the President's Office, et al., about Felipe and other colleagues/departments in December 2024 as he sought guidance on housing/academic issues. I am sharing this correspondence with you in case he complains

again." *Id.* Nothing about this email evinces retaliation. It simply reflects Defendant Hinds updating her supervisor on Mr. Moody's previous complaint for their situational awareness in case another such complaint followed. Mr. Moody also argues there was a "coordinated simultaneous reversal of all course grades, financial aid, and housing status thirteen days after NYIT's own legal officer acknowledged Plaintiff's litigation hold." Obj. at 26. This argument contradicts the facts. Defendant Hinds spent months trying to assist Mr. Moody with his enrollment, financial aid, and housing issues, and offered various options and potential solutions to his complaints and requests. *See* R&R at 4–9. Mr. Moody also sent Defendants numerous litigation holds before and after beginning this lawsuit. It is unsurprising that one of these "litigation holds" occurred in proximity to some action that Mr. Moody wishes to characterize as adverse..[4]

**Sixth**, Mr. Moody argues it was inconsistent of Judge Netburn to reason Mr. Moody could not state a claim against Defendant Hinds or NYIT under Title II, but then proceed to analyze the claim against NYIT under Title III, under the "liberal construction" doctrine, without doing the same for a potential claim against Ms. Hinds. Obj. at 27. Even if this were error, it was harmless, because Judge Netburn determined that Mr. Moody had not stated any Title III claim against NYIT for reasons that are both correct and equally applicable to Ms. Hinds. *See* R&R at 18–28. Accordingly, there would have been no need for her to repeat the same analysis concerning Ms. Hinds, and the failure to do so had no effect on the outcome.

[4] Mr. Moody also references an email from "Henao" that he did not want to meet with Mr. Moody alone again. Mr. Moody contends this evinces retaliation. Obj. at 26–27. It does not. The record includes multiple expletive-ridden emails Mr. Moody sent to staff who appear to have done everything they can to assist him. *See, e.g.*, Dkt. No. 1-11. It is unsurprising, to say the least, that following this treatment some of those staff members would not want to meet with Mr. Moody alone.

**Seventh**, Mr. Moody objects that Judge Netburn's recommendation that certain claims be denied with prejudice exceeds the relief requested and is inconsistent with her final recommendation to provide leave to amend. Obj. at 28–29. These twin recommendations are not inconsistent. Judge Netburn acted within her authority by recommending the Court dismiss certain claims with prejudice, and that decision was well-founded because, as discussed below, the identified statutes do not have a private right of action. Mr. Moody will have leave to amend because, while his current theories are not sustainable as a matter of law, it is possible that he could plead a claim on some new theory currently missing from his complaint.

**Eighth**, Mr. Moody argues Judge Netburn failed to address the declaratory and injunctive relief dimension of Counts II and III because she stated that FERPA and the HEA lack a private right of action for damages but did not consider whether he could pursue injunctive or declaratory relief under either. Obj. at 29–30. This argument fundamentally mis-states the conclusion of the R&R. Judge Netburn did not limit her conclusion to an action for damages. Rather, the R&R clearly states that FERPA "does not confer a private right of action," R&R at 29, and HEA "does not provide student borrowers a private right of action," *id.* at 30. The fact that Judge Netburn may have offered an action for damages as an example does not change the conclusion regarding the lack of <u>any</u> private right of action under these statutes. Declaratory and injunctive relief are not available when the underlying claim is not valid. *See, e.g., Magnoni v. Plainedge Union Free Sch. Dist.*, No. 17-CV-04043, 2018 WL 4017585, at *7 (E.D.N.Y. Aug. 22, 2018) (The Declaratory Judgment Act "is procedural only and does not create an independent cause of action," so it "cannot create legal rights that do not otherwise exist.").

**Ninth**, Mr. Moody argues Judge Netburn mischaracterized the contents of his Rule 11 motions. Obj. at 30. The Court has reviewed these motions and would deny them regardless of

Judge Netburn's characterization because Mr. Moody has not shown exceptional misconduct that merits Rule 11 sanctions.

**C. Track Three**

In Track Three, Mr. Moody identifies what he considers contradictions between the R&R and the facts. The so-called contradictions are as follows.

**First**, that Judge Netburn summarized Mr. Moody's self-described medical difficulties but nonetheless determined he had not properly alleged a disability. Obj. at 32–33. There is no contradiction because a "disability" under the ADA is a legal term of art and requires allegations that an impairment "substantially limits one or more . . . major life activities." *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 148 (2d Cir. 2024). Although Mr. Moody recounts various medical ailments, his complaint lacks allegations about how those ailments substantially limit a major life activity. *Accord Bramwell v. Montefiore Med. Ctr.*, No. 25-CV-07148 (LLS), 2026 WL 837562, at *2 (S.D.N.Y. Mar. 25, 2026).

**Second**, that Mr. Moody alleged NYIT changed his grade to "Never Attended" but Judge Netburn noted NYIT had to register his grades as "Never Attended" because there was no record of him attending classes. Obj. at 33–34. As noted above, there is no contradiction between these two statements. Judge Netburn simply described the cause of the event Mr. Moody described.

**Third**, that NYIT's accessibility services office deemed Mr. Moody had a disability but Judge Netburn determined he failed to allege a qualifying disability under the ADA. Obj. at 35. The conclusion of NYIT's accessibility services office (however relevant to whether Mr. Moody could receive services offered by NYIT) does not resolve the question of whether Mr. Moody has stated a "qualifying disability" within the meaning of the ADA in his legal complaint before the Court.

**Fourth**, that an email attached to Mr. Moody's complaint noted there was no record of Mr. Moody attending courses or engaging in academic-related activity but a separate email from NYIT's Assistant Director of Accessibility Services noted Mr. Moody had been in communication with his professors about his disabilities and had requested accommodations. Obj. at 36–37. Again, there is no contradiction here. Communicating with professors about one's disabilities or requested accommodations is not academic-related activity like attending classes, studying course materials, turning in assignments, or taking exams.

**Fifth**, that Judge Netburn reasoned Mr. Moody never alleged he participated in his courses but Judge Netburn also noted that NYIT's reply brief mentioned its review uncovered that Mr. Moody had in fact sat for one exam (while not attending any class in the course). Obj. at 37–39. Judge Netburn highlighted she could not rely on that allegation given it was outside the record. Judge Netburn was correct to decline to consider an unsworn factual representation in NYIT's briefing. *United States ex rel. Foreman*, 19 F.4th at 106.

**Sixth**, that Judge Netburn found that Mr. Moody failed to allege retaliatory animus notwithstanding the May 12, 2026 internal email from Ms. Hinds. Obj. at 39–40. As the Court already explained, Ms. Hinds' May 12, 2026 email does not evince retaliatory animus.

**Seventh and last**, that the Court denied Mr. Moody's motion for a temporary restraining order on October 27, 2025, based on an application filed on October 21, 2025, because he had not shown irreparable harm, but his official transcript filed on ECF on January 17, 2026 shows a course withdrawal date of October 27, 2025. Obj. at 41–42. First, this is not an event or issue addressed in or relevant to the R&R, so it is unclear how this is a "contradiction" of Judge Netburn's. Second, to the extent it is a motion for reconsideration of the denial of the TRO, it is untimely and does not meet the standards for a motion for reconsideration. Third, a notation of

withdrawal and assignment of a grade of Unofficial Withdrawal would not have been a violation of the requested TRO even if it had been granted. The relief requested was to "order Defendants to cease destruction, alteration, or transfer of Plaintiff's personal property and mail; direct Defendants to produce the complete education record within seven (7) days; compel preservation of all electronic and physical evidence . . . ." Dkt. No. 3. Plaintiff does not explain how NYIT's notations of academic status on an electronic version of his transcript violates any of the requested relief, or could possibly constitute irreparable harm, even if it had been known to the Court at the time the TRO was denied, which it was not.

**D. Track Four**

In Track Four, Mr. Moody cites a variety of documents or proceedings outside the record that he alleges contradicts Judge Netburn's factual chronology..[5] *See* Obj. at 44–51. These documents are either outside the record, not inconsistent or contradictory, irrelevant, and/or would not change the outcome because they do not evince retaliatory or discriminatory intent on the part of Defendants. Mr. Moody concludes "Track Four" by arguing these documents show the "Never Attended" designation was erroneous. They do not. Mr. Moody does not allege he attended any of his classes. And the documents he filed with his complaint contain the unrebutted assertion that he never attended his classes.

[5] Namely, a certification that NYIT made in a case before the U.S. Department of Education Office of Federal Student Aid that Mr. Moody had withdrawn as of February 25, 2025; a corrected 1098-T from Atlantic Specialty Insurance; a "Monticciolo October 24, 2025 FERPA response letter" stating Mr. Moody completed one exam in a Math class therefore his transcript for that class was being updated from Never Attended to UW (Unofficial Withdrawal) with a last date of attendance as February 25, 2025; and an apparent conflict between Mr. Moody's official transcript and NYIT's Canvas course management system. *See* Obj. 46–51.

## III. MR. MOODY'S OBJECTIONS TO THE COURT'S JUNE 30, 2026 ORDER AND JULY 14, 2026 ORDER ARE WITHOUT MERIT

The Court on June 30, 2026 issued an Order stating "objections are due by July 13, 2026," "[r]eplies to objections are due by July 27, 2026," and "[e]ach party may file precisely **one** objection and **one** reply." Dkt. No. 115. Mr. Moody argues the Court lacked authority to issue this order. Obj. at 13–15. Not so. The Court has inherent authority to manage its docket. *Kowalchuck v. Metropolitan Transportation Authority*, 94 F.4th 210, 214 (2d Cir. 2024). The Court exercised that authority to ensure objections and replies were made in an orderly and consolidated fashion, so that the Court could effectively decide the matter on the merits.

On July 14, 2026, the Court issued an order clarifying that—although Mr. Moody filed his objections over a week early on July 4, 2026—Defendants could nevertheless reply by July 27, 2026, on the original schedule. Dkt. No. 121. Mr. Moody objected that same day. Dkt. No. 122. The Court has discretion to extend deadlines, either at the request of a party or on its own motion, except when the time limit at issue is prescribed by Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b). *See* Fed. R. Civ. P. 6(b)(2). Responses to another party's objections to an R&R do not implicate these rules, so the Court acted within its authority by allowing Defendants to respond on the originally-ordered date, even though they would effectively have a longer time to respond because of Mr. Moody's unilateral actions.

## IV. THE R&R IS ADOPTED IN FULL

Finally, the Court determines the R&R is characteristically well-reasoned, thorough, and correct. Accordingly, and because none of Mr. Moody's objections are meritorious, the Court ADOPTS the R&R and GRANTS the motion to dismiss. Mr. Moody may file an amended complaint that is consistent with the R&R and this Opinion on or before Friday, September 18, 2026. Count I of the Complaint is DISMISSED WITHOUT PREJUDICE, with the

understanding that Mr. Moody may attempt to file a new claim under Title III of the ADA and under the Rehab Act. His Family Educational Rights and Privacy Act claim (Count II), Higher Education Act claim (Count III), and claim for deprivation of property and mail (Count IV) are DISMISSED WITH PREJUDICE.

## V. MR. MOODY'S OTHER PENDING MOTIONS ARE DENIED

Mr. Moody has filed numerous motions in this case. They are all DENIED.

- On January 28, 2026, Mr. Moody moved for judicial notice of "discriminatory and retaliatory litigation conduct reflected in Defendants' filings," asking the Court to take judicial notice of arguments in Defendants' motion briefing. Dkt. No. 59. The motion is DENIED. These are arguments the Court may consider (and has considered) without needing to take judicial notice.
- On January 29, 2026, Mr. Moody moved to sanction Defendants for alleged misrepresentations and failure to preserve electronically stored information. Dkt. No. 63. The motion is DENIED. "Courts may issue Rule 11 Sanctions only in extraordinary circumstances." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178 (S.D.N.Y. 2008). Mr. Moody has not plausibly alleged extraordinary circumstances meriting sanctions against Defendants.
- On January 30, 2026, Mr. Moody filed a "consolidated Article III motion for supervisory intervention, vacatur of Magistrate Judge Netburn's January 30, 2026 Text-Only Order, and reassignment." Dkt. No. 75. The motion is DENIED. Judge Netburn had authority to deny Mr. Moody's motion requesting her recusal. Her re-assignment is not required under 28 U.S.C. § 455(a) and would not be warranted in any event.

- Also on January 30, 2026, Mr. Moody filed a "motion for judicial supervisory intervention due to procedural collapse," namely "[u]nadjudicated emergency filings," a "magistrate judge adjudicating challenges to her own conduct," "[s]erial misstatements of the record across orders," "[t]hreats of sanctions for ADA-related filings, creating a chilling effect," and "[d]ocket irregularities and inconsistent upload sequencing, contrary to SDNY protocols." Dkt. No. 76. The motion is DENIED. The problem is not that this Court or Judge Netburn are neglecting Mr. Moody's emergency filings; it is that he files the same motions promptly after they have already been denied. *Compare* Dkt. No. 34 (motion to vacate orders due to structural defects), *with* Dkt. No. 36 (order denying motion and explaining why the "structural defects" do not exist) and Dkt. No. 52 (motion filed the same day as order denying previous motion that raised an identical argument). There are specific procedures (and accompanying rules) for motions for reconsideration, but Mr. Moody has not abided by those rules and courts are not required to promptly adjudicate repetitive motions that are based in nothing more than a rejection of the court's rulings or authority. Second, Judge Netburn is permitted to address motions seeking her recusal. *De Oliveira v. Tenet Healthcare*, No. 25-CV-01683 (VSB) (GS), 2025 WL 1548944, at *2 (S.D.N.Y. May 30, 2025) ("[M]otions for recusal are considered by the judge who is being asked to recuse himself."). Third, there are no serial misstatements. Mr. Moody can and will be sanctioned if he continues to make repeated filings on issues already addressed by the Court. And, fourth, there are no docket irregularities that require emergency attention.

- On February 5, 2026, Mr. Moody moved to declare "Defendants' reply memorandum void, non-cognizable, and in violation of Rule 12(b)(6)." Dkt. No. 87. The motion is DENIED. Defendants' reply brief is appropriate.
- On February 6, 2026, Mr. Moody moved to "declare the January 29 and January 30, 2026 order void for lack of jurisdiction, ultra vires action, structural defects, and Title II ADA violations." Dkt. No. 89. The motion is DENIED, for reasons already explained in this Opinion.
- Also on February 6, 2026, Mr. Moody moved to "compel proper emergency review of all Rule 65 filings, ADA access motions, and evidence-preservation requests," challenging the Court's October 27, 2025 Order denying his application for a temporary restraining order. Dkt. No. 90. The motion is DENIED. The Court may deny a temporary restraining order via a text order. *See* Dkt. No. 8. Furthermore, the Court's October 27, 2025 Order explained its reasoning. *Id.*
- On February 23, 2026, Mr. Moody filed a "motion to compel, for sanctions, and for Court-ordered program review." Dkt. No. 95. The motion is DENIED. Discovery has not begun so Mr. Moody may not issue subpoenas, there is no basis for sanctions, and the Court will not order a "program-review-style reconstruction."
- On March 12, 2026, Mr. Moody filed a "motion under Rule 60(b)(4) and Rule 60(d)(3) to vacate orders as void for lack of jurisdiction, due-process violations, ultra vires adjudication, *ex parte* communication, and fraud on the Court." Dkt. No. 96. The motion is DENIED for reasons already explained in both this Opinion and in numerous orders Judge Netburn issued.

- On April 1, 2026, Mr. Moody filed another motion under Rule 60(d)(3) to correct fraud on the Court. Dkt. No. 104. None of the instances described in the motion raise a concern of fraud and accordingly the motion is DENIED.
- Last, on June 25, 2026, Mr. Moody filed a "consolidated motion for sanctions under Fed. R. Civ. P. 11(c) and the Court's inherent authority." Dkt. No. 112. The motion is DENIED for reasons already explained in this Opinion.

## VI. FINAL WARNING TO MR. MOODY

Last, the Court issues a formal and **final** warning to Mr. Moody: Stop filing frivolous motions recycling the same objections, arguments, and contentions that both this Court and Judge Netburn have already rejected. Further abuses of the judicial process will not be tolerated. If this conduct persists, the next step will be an order requiring you to show cause why a filing injunction should not issue. *See, e.g.*, R&R at 35 (describing exemplars of the cases Mr. Moody has filed in this district where judges have either enjoined Mr. Moody from filing motions or ordered him to show cause why a filing injunction should not issue).

## CONCLUSION

For the foregoing reasons, Judge Netburn's R&R is ADOPTED, Defendants' motion to dismiss (Dkt. No. 39) is GRANTED, and all of Mr. Moody's other pending motions are DENIED. Mr. Moody is hereby ORDERED to file an amended complaint, if he wishes, on or before Friday, September 18, 2026. Any such amended complaint must be consistent with Judge Netburn's R&R and this Opinion, or it will be stricken.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 39, 59, 63, 75, 76, 87, 89, 90, 95, 96, 104, and 112.

Dated: August 31, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge